IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>JONATHAN VICENTE-VÁZQUEZ,<br><br>**Defendant**. | CRIMINAL NO. 22-322 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is defendant Jonathan Vicente-Vázquez's ("Defendant" or "Mr. Vicente") *Motion to Dismiss Indictment* ("*Motion to Dismiss*" or "*Motion*"). (Docket No. 25). Having reviewed Defendant's *Motion* and the United States of America's *Response in Opposition* at Docket No. 28, the Court hereby **DENIES** Defendant's *Motion to Dismiss* for the reasons discussed below.

### I. PROCEDURAL BACKGROUND

Mr. Vicente was previously convicted of two felonies. In 2015, Defendant pled guilty to possession with intent to distribute less than 250 grams of marijuana, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance thereof, in violation of 18 U.S.C. § 924(c)(1)(A). *See* United States v. Vicente-Vázquez, Crim. No. 14-384, Docket No. 51 (D.P.R. Sep. 22, 2015). In 2022,

Defendant pled guilty to one count of conspiracy to possess with intent to distribute more than 300 grams but less than 400 grams of cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(C), and 860. *See* United States v. Vicente-Vázquez, Crim. No. 16-773-13, Docket No. 1666 (D.P.R. 2022).

On July 14, 2022, a federal grand jury returned a one-count Indictment in the case at bar, charging Mr. Vicente with possession of ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Docket No. 1). The Indictment alleges that Defendant knowingly possessed sixty-nine rounds of .40 caliber ammunition despite "knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year." Id. at 1.

Defendant subsequently filed the pending *Motion to Dismiss* asserting that, in light of New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), section 922(g)(1) is unconstitutional as applied to him. (Docket No. 25). Per Mr. Vicente's reading of Bruen, the Government must show: (1) that § 922(g)(1) is consistent with the United States' historical tradition of firearm and ammunition regulation; and (2) a historical analogue for prohibiting individuals convicted of the specific offenses Defendant was convicted of, *i.e.*, possession of marijuana and/or conspiracy to possess cocaine, with intent to distribute. Id. at 7.

The Government filed a *Response in Opposition* maintaining

that Bruen did not invalidate 18 U.S.C. § 922(g)(1). (Docket No. 28). Moreover, the Government alleged that the felon in possession statute is consistent with the nation's historical tradition of firearm regulation. Id.

## II.  APPLICABLE LAW

### A. Relevant Constitutional and Statutory Provisions

The Second Amendment to the United States Constitution establishes that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

In pertinent part, section 922(g)(1) provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

In other words, § 922(g)(1) limits the right to bear arms articulated in the Second Amendment by criminalizing the possession of firearms or ammunition by previously convicted felons.

### B. Supreme Court Precedent

In District of Columbia v. Heller, the Supreme Court recognized that the Second Amendment "protect[s] the right of an

ordinary, law-abiding citizen to possess a handgun in the home for self-defense." Bruen, 142 S. Ct. at 2122. (citing District of Columbia v. Heller, 554 U.S. 570 (2008)). Accordingly, any absolute prohibition of handguns held and used for self-defense by individuals in the home would be unconstitutional. Heller, 554 U.S. at 636. Nevertheless, the Court acknowledged that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited" and affirmed that:

> Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, **nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons** and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

Id. at 626-27 (emphasis added).

Two years later, the Supreme Court determined "that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in Heller" and thus the protection of the right to bear arms in the home "applies equally to the Federal Government and the States." McDonald v. City of Chicago, 561 U.S. 742, 791, (2010). In reaching this conclusion, the McDonald Court reiterated:

> We made it clear in Heller that our holding did not cast doubt on such longstanding regulatory measures as "prohibitions on the

>possession of firearms by felons and the mentally ill," "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., at 626 – 627, 128 S.Ct., at 2816-2817. **We repeat those assurances here**.

Id. at 786 (emphasis added) (quoting Heller, 554 U.S. at 626-27).

Recently, consistent with Heller and McDonald, the Supreme Court in Bruen held that the Second and Fourteenth Amendments guarantee an individual's right to carry commonly used arms in public, "subject to certain reasonable, well-defined restrictions." Bruen, 142 S. Ct. at 2122, 2156. Therein, the Supreme Court expressly rejected the prevailing two-step framework developed by Courts of Appeals after Heller that combined history with means-end scrutiny to evaluate Second Amendment challenges. Id. at 2125-26. Instead, Bruen established that the proper standard for applying the Second Amendment is as follows: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at 2127-30.

The Bruen Court recognized that when confronting the constitutionality of present-day firearm regulations, the "historical inquiry that courts must conduct will often involve

reasoning by analogy." Id. at 2132. This in turn, "requires a determination of whether the two regulations are 'relevantly similar.'" Id. Although it did not provide a comprehensive list of features that render regulations relevantly similar under the Second Amendment, the Supreme Court did single out two important metrics: "how and why the regulations burden a law-abiding citizen's right to armed self-defense." Id. at 2132-33. (citing Heller and McDonald). Importantly, a "representative historical *analogue*" need not amount to a "historical *twin*." Id. at 2133 (emphasis in original).

Applying this test, the Supreme Court concluded New York's requirement that applicants show "proper cause exists" in order to obtain an unrestricted license to have and carry a concealed pistol was unconstitutional. *See* id. at 2156. ("At the end of this long journey through the Anglo-American history of public carry, we conclude that respondents have not met their burden to identify an American tradition justifying the State's proper-cause requirement."). However, the Bruen Court upheld the validity of "shall issue" licensing regimes currently in effect in forty-three states, "where authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements, without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." Id. at 2123.

## III. DISCUSSION

In the case at bar, the Court is tasked with evaluating whether section 922(g)(1) is unconstitutional as applied to Mr. Vicente in light of the Supreme Court's recent decision in Bruen. As a threshold matter, the Court, like many others that have faced similar claims, concludes that Bruen did not clearly "disturb the controlling caselaw that came before it." United States v. Giambro, 2023 WL 3727673, at *2 (D. Me. 2023). The Supreme Court repeatedly, and expressly, recognized that Bruen is consistent with Heller and McDonald. Id. at 2122. As noted above, these cases upheld "longstanding regulatory measures [such] as 'prohibitions on the possession of firearms by felons.'" McDonald, 561 U.S. at 786 (quoting Heller, 554 U.S. at 626). *See also* Bruen 142 S. Ct. at 2157, 2162.

Although the majority opinion in Bruen is silent as to prohibitions on the possession of firearms by felons, "six of the nine Justices pointed out that Bruen was not casting any doubt on this language" in Heller and McDonald. Vincent v. Garland, 80 F.4th 1197, 1201 (10th Cir. 2023) (quoting Bruen, 142 S. Ct. at 2157, 2162, 2189). Justice Alito expressed in his concurrence that while Bruen holds that states cannot prevent their law-abiding residents from carrying a gun for self-defense, nothing in the opinion "disturbed anything that [the Supreme Court] said in Heller or [McDonald] about restrictions that may be imposed on the possession

of carrying guns." Bruen, 142 S. Ct. at 2157 (Alito, J., concurring). Justice Kavanaugh's concurrence similarly quoted McDonald, concluding that "[n]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." Id. at 2162 (Kavanaugh, J., concurring, joined by Roberts, C.J.). Furthermore, Justice Breyer affirmed that, like Justice Kavanaugh, he understood that Bruen "cast no doubt" on Heller's finding that prohibitions on the possession of firearms by felons are presumptively lawful. Id. at 2189 (Breyer, J., dissenting, joined by Sotomayor and Kagan, JJ.).

The Court is aware that there is currently a circuit split as to whether section 922(g)(1) is consistent with Bruen. *Compare* Range v. Att'y Gen. United States of Am., 69 F.4th 96 (3d Cir. 2023) (finding that section 922(g)(1) was unconstitutional as applied to defendant previously convicted of making a false statement to obtain food stamps) *with* United States v. Jackson, 69 F.4th 495, 501-02 (8th Cir. 2023) (holding that section 922(g)(1) remains constitutional as applied to defendant and concluding that "there is no need for felony-by-felony litigation regarding the constitutionality" of section 922(g)(1)) *and* Vincent, 80 F.4th at 1202 (maintaining that Bruen did not expressly abrogate Tenth Circuit precedent that upheld "the constitutionality of the federal ban for any convicted felon's possession of a firearm" pursuant to Heller). Although the First Circuit has yet to address

this issue, it previously rejected an "as-applied" challenge to section 922(g)(1), finding that the statute remained constitutional after the Supreme Court rulings in Heller and McDonald. United States v. Torres-Rosario, 658 F.3d 110, 112-13 (1st Cir. 2011). The Court remains bound by this precedent as it has not "unmistakably been cast into disrepute" by Bruen. Eulitt ex rel. Eulitt v. Maine, Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004) *abrogated on other grounds by* Carson v. Makin, 142 S. Ct. 1987 (2022). *See also* United States v. Trinidad, 2022 WL 10067519, at *3 (D.P.R. 2022) ("Because *Bruen* has not affected *Torres-Rosario*—let alone unmistakably cast it into disrepute—we are bound by it.").

Even despite the above, Defendant's as-applied challenge still fails on the merits. By the Supreme Court's own account, the petitioners in Bruen were undisputedly "two ordinary, law-abiding, adult citizens" that are "part of 'the people' whom the Second Amendment protects." Bruen, 142 S. Ct. at 2134. Therefore, the opinion did not focus on the petitioner's characteristics, but whether the "plain text of the Second Amendment [protected petitioners'] proposed course of conduct—carrying handguns publicly for self-defense." Id. *See also* United States v. Rowson, 652 F. Supp. 3d 436, 459 (S.D.N.Y. 2023) (explaining that "the Court's focus in Bruen was not on potentially disqualifying status characteristics of the challengers to the statute. It was instead

on whether the Amendment's text covered the 'conduct' the statute proscribed."). Given this context, the Supreme Court was concerned with regulations burdening **a law-abiding citizen's** right to armed self-defense. Id. at 2132-33. The Bruen Court "was not addressing the question of whether felons should be disarmed" or whether they should not be considered part of "the people" protected by the Second Amendment. United States v. Gleaves, 2023 WL 1791866, at *3 (M.D. Tenn. 2023).

Given Defendant's previous convictions, which include possession of marijuana with intent to distribute, possession of a firearm in furtherance of drug trafficking, and conspiracy to possess cocaine with intent to distribute, it can be concluded that Mr. Vicente is not an ordinary, law-abiding citizen. The Court's inquiry is thus whether limiting a felon's right to possess firearms and ammunitions is consistent with the United States' history and tradition.

To this end, Mr. Vicente contends the Government must "show that permanently removing the Second Amendment right to possess ammunition of someone convicted of the *specific offenses* Mr. Vicente had been convicted of is consistent with our Nation's historical firearm regulations." (Docket No. 25 at 4) (emphasis in original). This interpretation is not supported by Bruen. Therein the Supreme Court cautioned that although "courts should not uphold every modern law that remotely resembles a historical analogue, .

Case 3:22-cr-00322-RAM-GLS   Document 38   Filed 11/09/23   Page 11 of 12

Criminal No. 22-322 (RAM)                                                    11

. . . analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." Bruen, 142 S. Ct. at 2133 (internal quotations omitted) (emphasis in original). Thus, "even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id.

As evinced by the Government, the United States has a longstanding tradition of disarming citizens deemed dangerous or unvirtuous, such as felons. (Docket No. 28 at 11-15). In the colonial era, Native Americans and religious minorities were prohibited from owning firearms. *See* Jackson, 69 F.4th at 502 (citing Michael A. Bellesiles, Gun Laws in Early America: The Regulation of Firearms Ownership, 1607-1794, 16 Law & Hist. Rev. 567, 578-79 (1998)). During the Revolutionary War, "the Continental Congress, Massachusetts, Virginia, Pennsylvania, Rhode Island, North Carolina, and New Jersey prohibited possession of firearms by people who refused to declare an oath of loyalty." Id. (citations omitted). Although *who* constitutes a "dangerous" or "unvirtuous" has shifted overtime, individuals categorized as such by legislators have had their right to possess arms limited.

Moreover, regulations have historically applied not only to firearms "but also ammunition and other associated accessories." United States v. Young, 639 F. Supp. 3d 515, 525 (W.D. Pa. 2022).

In 1637, before the Constitution, the Massachusetts colony enacted a law that:

> [R]equired named individuals who expressed "opinions & revelations" that "seduced & led into dangerous errors many of the people" of New England to turn in all "guns, pistols, swords, powder, shot, & match," and it further barred them from "buy[ing] or borrow[ing]" any of the same until such time as the local court said otherwise.

Robert J. Spitzer, Gun Law History in the United States and Second Amendment Rights, Law & Contemp. Probs., 2017, at 55, 72.

Considering Mr. Vicente's previous convictions, the Court finds that section 922(g)(1) is not unconstitutional as applied to him. *See also* Torres-Rosario, 658 F.3d at 113 ("Assuming *arguendo* that the Supreme Court might find some felonies so tame and technical as to be insufficient to justify [§ 922(g)(1)'s] ban, drug dealing is not likely to be among them.").

## IV. CONCLUSION

For the foregoing reasons, the *Motion to Dismiss Indictment* at Docket No. 25 is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 9th day of November 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge